**SO ORDERED.**

**SIGNED this 19 day of February, 2008.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Matthew Sebastian Higgins** | ) | **No. 07-10654** |
| **Mary Ann Higgins** | ) | **Chapter 13** |
| | ) | |
| **Debtors** | ) | |

**MEMORANDUM**

This case is before the court on (1) the debtors' objection to the allowance of the claim asserted by the Internal Revenue Service that was filed on June 6, 2007, as amended on October 3, 2007, and as further amended by the brief filed by the debtors on February 4, 2008,[1] (2) the

---

[1] The court previously entered an order giving the debtors through January 10, 2008, within which to file a further amendment of the objection. They did not do so, but did raise a new ground for disallowance of the claim in their February 4 brief. Nevertheless, the IRS had an opportunity to obtain discovery from the debtors with respect to the new ground, and in the absence of a showing of prejudice to the IRS the court will treat the debtors' February 4 brief as having further amended the objection to claim.

1

IRS's objection to confirmation of the debtors' chapter 13 plan,[2] and (3) the IRS's motion to dismiss the October 3 amended objection to claim. The IRS's proof of claim asserts a claim for 2005 income taxes in the amount of $61,715.72. A portion of the claim arises from $93,739 in "discharge of indebtedness" income reported to the IRS by New Century Mortgage Corporation, which foreclosed on the debtors' real property on Burnt Mill Road in Walker County, Georgia. It is this portion of the claim that the debtors challenge. Having considered the proof presented at the evidentiary hearing, the court now enters this memorandum, which constitutes its findings of fact and conclusions of law pursuant to Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure.

I.

The debtors' witnesses consisted of debtor Mary Ann Higgins and Robert Rutzky of the Insolvency Unit of the IRS. The IRS's only witness was Mr. Rutzky.

Ms. Higgins testified that she suffers from a number of medical conditions for which she takes prescription medications and that, as a result, her memory is faulty. In her words: "I can't even remember what happened Friday." In addition, Ms. Higgins testified that, due to a water heater leak, all the debtors' records for the year when the IRS's claim accrued were destroyed.

Ms. Higgins testified that the debtors purchased the Georgia property in 2001 or 2002, borrowing about $100,000 in connection with the purchase. The debtors stopped making pay-

---

[2] The plan was confirmed on May 18, 2007, but confirmation was expressly subject to "*de novo* review" on the IRS's objection to confirmation.

ments on the loan after the October 2005 payment and moved out of the house, and the lender foreclosed in late 2005. At the time of the foreclosure, according to Ms. Higgins, the mortgagee was owed about $98,000. She testified that the debtors never received any notices of or relating to the foreclosure, that they received no money as a result of the foreclosure, that they have never received any notice of a proceeding to confirm the foreclosure sale, and that there have been no efforts to collect any deficiency remaining after application of the sale proceeds to the debt. The debtors introduced no evidence regarding the value of the Georgia property at any point in time.

At the time of the foreclosure, Ms. Higgins testified, the debtors' other assets consisted of a house and lot located at 110 North Moore Road in Chattanooga, Tennessee, a 1997 Chevrolet C1500 pickup truck, a 1997 Chevrolet Blazer, a pension plan with a "probable value of $9000.00 at the time," a Chrysler Cirrus automobile, and other personal property with a total value of $2,000 to $3,000. Ms. Higgins valued the Moore Road property at $70,000, based on the amount she believes was owed on it in late 2005 and the 2007 tax appraisal.[3] She valued the pickup truck at $5,000 to $7,000 and the Blazer at $4,000. She testified that the amount financed on the loan secured by those two vehicles, obtained in 2005, was $7,744. She did not testify as to the value of the Cirrus or the amount of debt encumbering it, but the debtors' schedules of assets and lia-

---

[3] That the value of the property was based primarily on the amount of the debt secured by it was shown on cross-examination, when Ms. Higgins indicated that the value went up from $70,000 to $85,000 because the debtors "had to refinance" that property. Thus, the $85,000 value show in the debtors' Schedule A represents "what we owe on it." Ms. Higgins testified that the Moore Road property was acquired in 1996, but she did not recall the purchase price. She also said that the debtors would have accepted a $70,000 offer to purchase the property had such an offer been made in 2005.

bilities, which were admitted into evidence, value that vehicle at $3,637.50 and state that the balance of the debt was $1,480.00 as of February 2007.

Ms. Higgins testified that, at the time of the foreclosure on the Georgia real property, the debtors' other liabilities totaled $32,860.00. Most of those debts were for credit cards, but, because the debtors do not have any monthly statements for 2005, they started with the amount of the debt as of February 2007 and added in the payments they believe they made between late 2005 and February 2007. Those payments were added to the debt on a dollar-for-dollar basis, even though Ms. Higgins testified (and the debtors' attorney argued) that most of a credit card payment consists of interest. Thus, the amounts of the credit card debts were substantially overstated. For example, if a debtor owes $1,000 on a credit card and made payments totaling $500 over the previous six months, the balance six months ago was not $1,500; since the largest part (say, $400) of the payments was applied to interest, the debt six months ago was only slightly more than the current debt ($1,100, again assuming that $400 was applied to interest). Accordingly, even if the debtors' memory of what payments were made on the debt between late 2005 and early 2007 was accurate, their methodology probably overstates the amount of the debt as of late 2005 by a considerable sum.

Ms. Higgins testified that the debtors had a negative net worth as of late 2005. On cross-examination, however, she acknowledged that all of the information the debtors provided regarding the values of their assets and the amounts of their debts were estimates.

Mr. Rutzky testified that $93,739 was added to the debtors' income for 2005 based on the "discharge of indebtedness" amount reported by New Century Mortgage on Form 1099, appar-

ently as a result of the foreclosure on the Georgia property or the mortgagee's decision not to attempt to collect a deficiency remaining after the sale. When the debtors questioned whether any indebtedness was discharged, he and other IRS employees attempted to investigate by reviewing Walker County real property records and attempting to contact the lender. They were unable to find any pertinent records and were unable to contact the lender. The debtors introduced into evidence a Deed Under Power reflecting a foreclosure sale whereby New Century bid in certain real property owned by the debtors on Burnt Mill Road in Walker County, Georgia, for $126,194.04. However, the deed was dated May 4, 2004, indicated that the foreclosure notice was published on four occasions in April 2004, stated that the sale took place on the first Tuesday of May 2004, and was recorded on May 26, 2004.[4] Thus, this deed remains a mystery in light of Ms. Higgins's confident testimony (and the debtors' attorney's consistent argument) that the debtors made their payments through October 2005 and that the foreclosure took place in late 2005.

## II.

The Internal Revenue Code provides that gross income includes "[i]ncome from discharge of indebtedness." 26 U.S.C. § 61(a)(12). Exceptions to that general rule include discharges of debts taking place while the taxpayer is insolvent. *Id.* § 108(a)(1)(B). Thus, the issues presented in this case are whether there was a discharge of indebtedness as a result of the fore-

---

[4] The deed also indicated that the debt was incurred in May 2003 (while Ms. Higgins testified that the debtors bought the property in 2001 or 2002) and that the original principal amount of the indebtedness was $152,000.00 (while Ms. Higgins testified that the debtors financed about $100,000).

closure on the Georgia property or the mortgagee's failure timely to assert a claim for a deficiency and, if so, whether and to what extent the insolvency exception is applicable.[5]

### A.

There could be no income from the discharge of indebtedness if, at the time of the foreclosure, the fair market value of the Georgia property was equal to or greater than the balance of the debt encumbering that property. According to the Form 1099 that New Century issued to the IRS, the amount of the debt exceeded the price obtained at the foreclosure sale by $93,739. The only evidence regarding the balance of the debt at the time of the foreclosure was Ms. Higgins's testimony, which was unsupported by any documentary evidence. In light of the fact that her memory is admittedly seriously flawed, the court cannot accept that testimony as establishing the amount of the debt. Moreover, on the other side of the equation, the debtors introduced no evidence regarding the value of the property at the time of the foreclosure. "[I]t is well established that, absent clear and convincing proof to the contrary, the sale price of property at a foreclosure sale is presumed to be its fair market value." *Carlson v. Comm'r*, 116 T.C. 87, 108 (2001); *accord*, *e.g.*, *Frazier v. Comm'r*, 111 T.C. 243, 246 (1998). The debtors have not shown by clear and convincing evidence that the fair market value of the property was greater than the sale price as reflected in the deficiency amount reported on the Form 1099. *See also* Fed. R. Bankr. P.

---

[5] The IRS originally asserted insufficiency of service of the original and amended objections to claim, as the debtors failed to send copies to the Attorney General of the United States. *See* Fed. R. Bankr. P. 9014, 7004(b)(4). However, the government waived that objection at the commencement of the evidentiary hearing in this matter.

3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.").

The only evidence before the court that has any bearing on the value issues is the Deed Under Power. It indicates that New Century Mortgage Corporation foreclosed on property of the debtors located on Burnt Mill Road in Walker County, Georgia, and that New Century bid in that property for $126,194.04. Thus, if this is the deed evidencing the foreclosure on the property on the basis of which the Form 1099 was issued, it seems doubtful that the balance of the debt encumbering the property was $93,739 more than the bid amount: it is unlikely that the debt balance was around $220,000 when the original principal amount of the debt recited in the deed issued just a year after the loan was made was $152,000. However, both Ms. Higgins and the debtors' attorney repeatedly and confidently stated to the court that the foreclosure took place in late 2005, more than 17 months after the foreclosure sale described in the Deed Under Power. There was no explanation offered either by way of testimony or argument from the debtors that shed light on the meaning or relevancy of the Deed Under Power, and, unfortunately, it remains a mystery. Hence, in the absence of evidence showing that the Deed Under Power relates to the foreclosure with respect to which the Form 1099 was issued, and in the absence of evidence regarding the value of the property at the time of the foreclosure, and in the absence of credible evidence as to the balance of the debt at the time of the foreclosure, the court cannot find that the fair market value of the property equaled or exceeded the balance of the debt.

**B.**

The debtors also rely on Section 44-14-161 of the Official Code of Georgia Annotated as establishing that there was no deficiency. That statute provides:

> (a) When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.
>
> (b) The court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale.
>
> (c) The court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may order a resale of the property for good cause shown.

The debtors contend that, because New Century Mortgage did not timely commence a proceeding to obtain a deficiency judgment, there is a conclusive presumption that there was no deficiency, i.e., that the collateral brought enough at foreclosure to satisfy the debt. Counsel for the debtors admits that there is no case authority for such a reading of the statute, and this court does not so read the statute. If the lender does not timely commence a confirmation proceeding, Section 44-14-161 merely bars it from collecting any deficiency; the statute does not establish that there was no deficiency. In other words, the fact that the lender chose not to seek collection of a deficiency does not prove that there was no deficiency to collect. Rather, the decision not to at-

tempt to collect the deficiency conferred an economic benefit on the debtors, which is the very basis for the taxation of "discharge of indebtedness" income.

The Georgia statute is precisely the type of statute that gives rise to "discharge of indebtedness" income. 26 C.F.R. § 1.6050P-1 requires those discharging an indebtedness to report the discharge on a Form 1099-C. Subdivision (b) of that Treasury Regulation provides, in pertinent part:

> **(1) In general.** Solely for purposes of this section, . . . indebtedness is discharged on the date of the occurrence of an identifiable event specified in paragraph (b)(2) of this section.
>
> **(2) Identifiable events–(I) In general.** An identifiable event is–
> . . . .
>
>> (C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, . . . or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding . . . .

*Id.* § 1.6050P-1(b)(1), (2)(i)(C). Section 44-14-161 of the Official Code of Georgia Annotated establishes a "statutory period for . . . commencing a deficiency judgment proceeding" and so the expiration of that period was an "identifiable event" giving rise to the discharge of indebtedness reportable by New Century and taxable to the debtors as income. *See also*, *e.g.*, *Estate of Bankhead v. Comm'r*, 60 T.C. 535 (1973) (failure to file claims against probate estate by deadline established by state statute, extinguishing claims by operation of law, resulted in estate's receipt of income for tax purposes). For this reason, the IRS's motion to dismiss the amendment to the objection to claim filed on October 3, 2007, is well taken.

## C.

Finally, the court turns to the insolvency exclusion set forth in 26 U.S.C. § 108(a)(1)(B), which provides that "[g]ross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if . . . the discharge occurs when the taxpayer is insolvent." The exclusion is not an "all or nothing" defense; rather the amount of the debt discharged is excluded from income only to the extent of the insolvency. 26 U.S.C. § 108(a)(3). In this case, there is little question that the debtors were insolvent at the time of the foreclosure, but it was incumbent upon them to show the extent of the insolvency. *See*, *e.g.*, *Traci v. Comm'r*, T.C. Memo. 1992-708, 1992 WL 368583, at *2 (Dec. 15, 1992) ("The burden of establishing that the insolvency exception applies is upon petitioner."). That they have not done.

For the purposes of the exclusion, "the term 'insolvent' means the excess of liabilities over the fair market value of assets." 26 U.S.C. § 108(d)(3). As previously indicated, the debtors have presented no evidence of the value of the Georgia property. Moreover, their valuation of the Moore Road property is subject to question since it appears to be based primarily on the amount of the debt encumbering the property in late 2005, all according to the debtors' recollection without the benefit of any appraisals, 2005 tax appraisals, or other documentary support. On the debt side of their balance sheet, the debtors' interrogatory answers indicate that the debts secured by two of their three vehicles totaled about $9,500 in late 2005, while Ms. Higgins acknowledged that the amount financed with that lender in October 2005 was less than $7,800. The 2005 balances of the credit card debts provided by the debtors are highly doubtful because they

depend on the debtors' recollections regarding payments made on the debts between late 2005 and early 2007 and because the debtors assumed that 100% of each payment was applied to principal when Ms. Higgins (and the debtors' attorney) acknowledged that the biggest part of each payment would have been applied to the payment of interest.

The court has little doubt that the debtors were insolvent at the time of the foreclosure, but it cannot determine the extent of the insolvency on the evidence presented. Therefore it cannot determine the extent to which the amount of indebtedness discharged should be excluded from income. Accordingly, the court concludes that the debtors have not carried their burden of overcoming the *prima facie* status accorded to the IRS's proof of claim. Fed. R. Bankr. P. 3001(f).

### III.

For the foregoing reasons, the court will enter a separate order (i) overruling the debtors' objection to the allowance of the IRS's claim, as amended, (ii) granting the IRS's motion to dismiss the amendment to the objection filed on October 3, 2007, and (iii) sustaining the IRS's objection to confirmation of the debtors' chapter 13 plan. That order will also schedule a further hearing on the standing chapter 13 trustee's pending motion to dismiss the debtors' case for "lack of feasibility."

# # #